STATE ex rel. D.M., Relator,

v.

The Honorable Robert G.J. HOESTER, Judge of the Circuit Court of St. Louis County, Division No. 8, Respondent.

No. 65746.

Supreme Court of Missouri, En Banc.

Dec. 18, 1984.

Robert B. Hoemeke, John M. Hessel, Joseph J. Trad, St. Louis, for relator.

Francis L. Kenney III, Clayton, for respondent.

RENDLEN, Chief Justice.

This proceeding in prohibition arises from a damage action for intentional tort. Relator D.M., defendant in the trial below,

asserted the physician-patient privilege [1] and sought to preclude Respondent Judge Robert Hoester from ordering disclosure of the testimony and medical records of D.M.'s psychiatrist. Respondent argued that § 210.140, RSMo Cum.Supp.1983,[2] rendered inapplicable or suspended the privilege in such case.

In her petition for damages plaintiff K.M. alleges that she was repeatedly assaulted and sexually molested by her adoptive father D.M. over a number of years and that her mother C.M. knowingly allowed the abuse to occur. During this period D.M. allegedly sought psychiatric treatment for his abusive behavior. In preparation for trial plaintiff sought to depose Dr. Anton Heusler, D.M.'s psychiatrist, and requested him to produce medical records pertaining to the patient's treatment. D.M. asserted the physician-patient privilege and moved to quash the notice of deposition.

Dr. Heusler, deposed before the hearing on the motion to quash, relied on the physician-patient privilege and refused to answer questions relating to D.M.'s treatment or to produce the requested records. Thereupon plaintiff moved to compel testimony and to produce documents, asserting inapplicability of the privilege because of § 210.140.

■ Respondent denied D.M.'s motion to quash, sustained plaintiff's motion to compel testimony and for production of docu-

ments and ordered the retaking of Dr. Heusler's deposition. D.M. petitioned for a stay of the circuit court order, and the Missouri Court of Appeals Eastern District issued its Preliminary Writ of Prohibition. The court found that § 210.140 had no effect on the asserted privilege in a civil action for damages and ordered its Preliminary Writ made absolute. We granted transfer.[3]

■ It is axiomatic that the physician-patient privilege has no constitutional underpinning and is statutory in origin. *State v. Carter,* 641 S.W.2d 54 (Mo. banc 1982). What the legislature grants it can also modify or abolish. *Randolph v. Supreme Liberty Life Insurance Co.,* 359 Mo. 251, 221 S.W.2d 155 (banc 1949). The issue in the case at bar is whether the legislature intended § 210.140 to vitiate the physician-patient privilege in damage actions for child abuse.

■ In determining the legislative intent we must first consider the language of the statute and the words employed in their plain and ordinary meaning. *L & R Distributing Co., Inc., v. Missouri Department of Revenue,* 648 S.W.2d 91 (Mo.1983). Section 210.140 provides:

Any legally recognized privileged communication, except that between attorney and client, *shall not apply to situations involving* known or suspected *child abuse* or neglect *and shall not consti-*

---

**1.** Section 491.060(5), RSMo Cum.Supp.1983, provides that a physician shall be incompetent to testify "concerning any information which he may have acquired from any patient while attending him in a professional character, and which information was necessary to enable him to prescribe for such patient as a physician, or do any act for him as a surgeon."

**2.** The statute provides in part that "[a]ny legally recognized privileged communication, except that between attorney and client, shall not apply to situations involving known or suspected child abuse or neglect and shall not constitute grounds for failure ... to give or accept evidence in any judicial proceeding relating to child abuse or neglect."

All references are to RSMo Cum.Supp.1983 unless otherwise noted.

**3.** It should be noted at the outset that prohibition lies in some instances to prevent judicial violation of statutory inhibitions, though in *State ex rel. Morasch v. Kimberlin,* 654 S.W.2d 889 (Mo. banc 1983), we held that violation of a statutory provision by a trial court does not always constitute an act in excess of its jurisdiction. The court's order in the instant case would allow discovery of materials privileged under § 491.060(5) RSMo Cum.Supp.1983. Since § 491.060(5) standing alone operates in part to restrict the power of a trial court in the discovery process, *see State ex rel. Mehle v. Harper,* 643 S.W.2d 643 (Mo.App.1982), it can be said that violation of the statute constitutes an act in excess of jurisdiction. *State ex rel. Collins v. Donelson,* 557 S.W.2d 707 (Mo.App.1977). *See State ex rel. Uregas Service Co., Inc., v. Adams,* 262 S.W.2d 9 (Mo. banc 1953).

*tute grounds for failure* to report as required or permitted by sections 210.110 to 210.165, to cooperate with the division in any of its activities pursuant to sections 210.110 to 210.165, *or to give or accept evidence in any judicial proceeding relating to child abuse or neglect.* (Emphasis added.)

Respondent contends the emphasized language of the statute removes the physician-patient privilege from *any* judicial proceeding pertaining to child abuse or neglect and concludes that where, as here, the language used is plain and admits of only one meaning, there is no room for further construction. *L & R Distributing,* 648 S.W.2d at 95.

On the other hand, relator argues the abatement applies only to judicial proceedings contemplated by the Child Protection and Reformation Act, §§ 210.110–210.165, and that the act is fundamentally designed to encourage the reporting of suspected instances of child abuse to the Division of Family Services and to ensure that appropriate steps are taken to protect the victimized child. *Nelson v. Freeman,* 537 F.Supp. 602 (W.D.Mo.1982), *aff'd sub nom., Nelson v. Missouri Division of Family Services,* 706 F.2d 276 (8th Cir.1983). Relator further contends the purpose of the act implicitly limits the application of the privilege abrogation to those judicial proceedings arising within the statutory scheme.

■■■ The difficulty with relator's argument is the language of the statute itself. We find no indication the legislature intended to limit the broad language of § 210.140 and to exclude from its purview a civil action for damages. A detailed examination of pertinent portions of § 210.140 reinforces our view of the legislative intent. The first section of the statute which provides,

*Any legally recognized privileged communication,* except that between attorney and client ... (emphasis added),

without question refers to, among others, the doctor-patient privilege. This section also describes the instances in which the privilege shall not pertain. It states the privilege

shall not apply to *situations* involving ... child abuse or neglect .... (Emphasis added.)

The very broad term "situations" most certainly includes those instances bearing either civil or criminal implications[4] and is not limited to one or the other.

The second section of the statute consists of three subparts, which with specificity spell out those "situations" to which the privilege will not apply or protect those involved in child abuse or neglect. The first two subparts state:

[The Doctor-Patient privilege] shall not constitute grounds for failure to *report* as required or permitted by sections 210.-110 to 210.165, [or for failure] to *cooperate* with the division in any of its activities pursuant to sections 210.110 to 210.-165.... (Emphasis added.)

In these subparts the legislature makes manifest its intent that those who must "report" and "cooperate" under the terms of the child "protection" and "abuse" statutes will not be heard to raise the privilege in those cases where appropriate action might be taken to invoke sanctions or require such reporting or cooperation with "the division."

The third subpart relates to *judicial proceedings* in which the privilege shall not be invoked to prevent the giving or acceptance of evidence. This subpart is not limited to those instances in which failure to "report" or "cooperate" with the "division" has occurred nor is it tied to only those cases in which actions are brought under Sections 210.110 to 210.165. Neither, as previously noted, is it limited to either criminal or civil proceedings, instead the broad language explains the privilege shall not be applica-

---

**4.** In *State v. Brydon,* 626 S.W.2d 443 (Mo.App. 1981), it was held that criminal cases are within the statute's scope.

ble or constitute grounds to bar the giving or accepting of

evidence in *any* judicial proceeding relating to child abuse or neglect.... (Emphasis added.)

Had the legislature intended a narrower range of the nullifying section it could have readily limited its scope. For example, the legislatures of several states have restricted the application of the privilege abrogation to judicial proceedings explicitly arising from the operation of their respective child abuse acts.[5]

 Our Legislature imposed no such limitation on § 210.140, and we are not at liberty to add by interpolation or otherwise limiting provisions not plainly written or necessarily implied from the language used. *Missouri Public Service Co. v. Platte-Clay Electric Co-op.,* 407 S.W.2d 883 (Mo.1966).[6] Nor from the text of this statute can we say the legislature inadvertently neglected to limit the language of the privilege-nullifying statute. Indeed, the number of reports of child abuse cases appearing in a multitude of publications indicate the problem has reached epidemic proportions and apparently the legislature has determined the deterrent value of tort judgments as well as other available sanctions are necessary to stem the rising tide.

We quash the preliminary order in prohibition.

All concur.

5. *See, e.g.,* Alaska, AS 47.17.060 (1984 Cum. Supp.): "Neither the physician-patient privilege nor the husband-wife privilege is a ground for excluding evidence regarding a child's harm, or its cause, in a judicial proceeding *related to a report made under this chapter.*" (Emphasis added.) *See also* California, Cal.Pen.Code § 11171(b) (1982); Colorado, C.R.S. § 19–10–112 (1973 and Cum.Supp.1983); Kentucky, KRS § 199.335(7) (1982 and 1984 Cum.Supp.); New Hampshire, RSA § 169–C:32 (Cum.Supp.1983); North Dakota, NDCC § 50–25.1–10 (1981); and Oregon, ORS § 418.775 (1983).

6. Relator urges that we deny application of the statute to civil cases because abrogation of the privilege will deter child abusers from seeking psychiatric treatment. The argument is not persuasive as the alleged "disincentive" or "chilling

effect" is absorbed in light of the criminal implications. Criminal prosecutions can be brought against a child abuser who is reported to the Division of Family Services under the statute, § 210.145.7, RSMo Cum.Supp.1983, and the privilege is clearly not available in such a proceeding. *See State v. Brydon,* 626 S.W.2d 443 (Mo.App.1981). The possible disincentive the threat of *civil* action poses becomes of little moment for the child molester knows he faces possible criminal prosecution and the privilege is not available to prevent disclosures in such proceedings. Accordingly the additional possibility of abrogation of the privilege in civil proceedings would add little to the effect resulting from the threat of the criminal prosecution and the knowledge that the physician-patient privilege is unavailable there.