**STATE of Missouri ex rel. Walter E. HENZE and Mildred M. Henze, Appellants,**

**v.**

**Charles WETZEL, et al., Respondents,**

**and**

**Kelley Properties, Inc., Intervenor–Respondent.**

No. 53900.

Missouri Court of Appeals, Eastern District, Division Five.

July 12, 1988.

Rehearing Denied Aug. 10, 1988.

David L. Campbell, John Joseph Campbell, St. Louis, for appellants.

David Michael Harris, Donald J. Stohr, James W. Erwin, St. Louis, for respondents.

SIMEONE, Senior Judge.

This is an appeal by appellants-relators, Walter E. and his wife Mildred M. Henze, from a judgment of the circuit court of St. Louis County in favor of respondents, the members of the Board of Adjustment of

the City of Des Peres, which affirmed an order of the Board granting certain variances to Kelley Properties, Inc. On appeal, Kelley Properties filed a motion to dismiss for the reason that the trial court lacked jurisdiction to determine the writ of certiorari because no notice was given by relators to Kelley Properties, Inc. either within thirty days after the decision of the board of adjustment or thereafter. The motion to dismiss the appeal was taken with the cause. We now grant Kelley's motion to dismiss the appeal. The dispositive issue is whether, in the procedural posture of the record, the circuit court had jurisdiction to enter its order.

To understand the procedural posture of this proceeding, a review of the facts is necessary. Kelley Properties, Inc. owns property consisting of approximately 1.1 acres in the City of Des Peres, located at the corner of Manchester and Tallie Roads. It fronts upon Manchester Road to the north, and is bordered on the west by Tallie Avenue and on the south by Manhattan Avenue. It has an irregular shape and narrows from west to east. The property lies within the C–1, commercial zoning district, which permits the use of land for offices and retail stores. The relators-appellants, Mr. and Mrs. Henze, own land located at 1012 Tallie Drive, near the property owned by Kelley. Kelley sought certain variances to construct a two story building for commercial purposes.

On June 13, 1985, Kelley appealed from the Planning and Zoning Commission to the Board of Adjustment. In its petition for appeal, Kelley sought six variances. One variance was to reduce the rear buffer zone requirement from 25 to 3 feet. Another sought a variance from the 40 foot parking set back requirement on Manhattan Avenue to 23 feet. The appeal stated that the "variances are requested in order to insure compliance with the parking space requirements. Any reduction of the total parking spaces ... would create a hardship and make the proposed use of the property impractical."

On July 18, 1985, the board held the first of two public hearings at which the requested variances were considered. At this public hearing, Mr. Henze expressed his opposition to the granting of the variances.

At the July meeting, the board voted informally to indicate its position or "general feeling" to grant four of the variances but rejected the request to reduce the rear buffer zone, and by a vote of 1–4 rejected the reduction in the parking set back. These were not formal denials, but mere indications of the position of the board. The board granted Kelley a continuance so that Kelley could return to the planning and zoning commission. Kelley met with the Planning and Zoning Commission and amended its requests. Under the new proposal, Kelley sought a set back of 33 feet in lieu of the 23 feet initially proposed, and requested a 13 foot rear buffer zone.

After the July 18, 1985 hearing, the subcommittee of the planning and zoning commission met with the vice president of Kelley and the director of public works and reported to the Commission that the "Kelley people" suggested a set back of 33 feet, a rear yard buffer from the required 25 feet to 13 and a reduction of parking spaces from 60 to 55.

On August 29, 1985, the board held its second hearing. The board again considered all six variances and was given the latest recommendations of planning and zoning, but it decided to consider the original requests as well. No amendment of the original petition for variances was made. Mr. Henze again spoke at the meeting and was opposed to the variances. Other people spoke in favor of the variances. At this meeting variances were unanimously granted reducing the parking set back from 40 feet to 23 feet. The motion was made by a member of the board, Mr. Tomasovic. A motion to reduce the buffer from 25 to 13 feet was also made by Mr. Tomasovic. The request to reduce the buffer zone from 25 feet to 13 feet initially received three votes in favor and two against. Since §§ 89.090, R.S.Mo. and 435.-050(C) of the city code require the affirmative vote of four members, this request for a 13 foot buffer was therefore technically

denied. But upon review of the tally sheet, the chairman realized he made a mistake by voting against, and, changed his vote to "aye." The Director of Public Works proceeded to announce the passage of the variances. The reduction of parking spaces from 65 was denied.

On September 27, 1985, relators filed their petition for review and certiorari in the circuit court of St. Louis County alleging that the variances were "illegal and unlawful," praying for a writ of certiorari and upon review, to reverse and set aside the granted variances. Kelley did not appeal from the determinations of the board. Kelley was not made a party to the petition for review, and was never given notice by relators that the action had been commenced, nor was Kelley forwarded a copy of the petition for review. Kelley was, however, informed by the city by letter dated November 27, 1985 that the action had been commenced. On December 12, 1985, and again on April 24, 1986, Kelley sought to intervene by motion. The motion was granted on May 15, 1986. The motion alleged that Kelley had expended over $1 million dollars since the variances were granted. On April 24, 1986, Kelley also filed a motion for summary judgment on the ground that the trial court lacked jurisdiction because the relators failed to give notice to it pursuant to § 536.110.2, R.S.Mo. An affidavit filed by Joseph J. Kelley, Jr., President, stated that Kelley had committed $2.3 million to develop the property and had spent over $1 million on the project. This motion was denied on July 28, 1985.

On February 28, 1986, the writ of certiorari issued. On March 21, 1986, respondents filed their return. On May 15, 1986, Kelley was granted leave to intervene. On September 14, 1987, the cause was submitted on briefs, and on October 14, 1987, the court affirmed the decision of the board. The court found that these proceedings were governed by § 89.110, R.S.Mo. 1986 and "not by the provisions of Section 536.110, RSMo," and this "court has jurisdiction to hear the Relator's [sic] cause."

On appeal, relators-appellants, Mr. and Mrs. Henze, contend that the trial court erred in affirming the actions and decisions of the Des Peres Board of Adjustment because (1) the variance reducing the buffer zone from 25 feet to 13 feet was not legally adopted since it did not receive the concurrence of at least four members of the board as required by § 89.090.2, R.S.Mo. and § 435.090.C of the Des Peres ordinances, (2) both variances—reducing the buffer zone from 25 feet to 13 feet and the parking set back from 40 feet to 23 feet— were not legally adopted since there was no finding by the board of "practical difficulties or unnecessary hardship" as required by § 89.090.1(3) R.S.Mo. and § 405.040.A.3 of the city code, and (3) the Board of Adjustment did not have jurisdiction to grant the variances since there was no appeal before it of the original variance requests since those requests had been abandoned and dismissed where no amendments to the original request for variances had been made.

On March 4, 1988, Kelley filed its motion to dismiss this appeal for lack of subject matter jurisdiction. In support of its motion, Kelley contends that the documents contained in the supplementary legal file moving the trial court to grant summary judgment in its favor because the relators failed to give any notice or notice within thirty days to Kelley, or to deliver a copy of the petition for review is a jurisdictional defect and hence the appeal should be dismissed.

In response to Kelley's motion to dismiss, relators state that the trial court overruled Kelley's motion for summary judgment and further that Kelley did not file any notice of appeal to this court from the August, 1985 decision of the board granting the variances.

Of significant import in this case is whether the relators' appeal should be dismissed because of lack of jurisdiction both in the trial court and in this court. We believe that Kelley's motion to dismiss is well taken in that the trial court did not have jurisdiction to review the proceedings of the Board of Adjustment inasmuch as

relators never gave any notice, nor served or delivered any copy of the petition for review to "each party of record in the proceedings." Section 536.110.2, R.S.Mo. 1986.

In determining whether Kelley's motion to dismiss this appeal should be granted, we must determine (1) whether Kelley, the applicant and awardee of the two variances is an indispensable party to the proceeding filed by relators, (2) whether § 536.110.2 is an essential supplement to § 89.110 so as to require a notice or delivery of the petition for review to Kelley by the relators, (3) whether the failure of the appellants to give *any* notice, or to deliver a copy of the petition for review to Kelley is a jurisdictional defect under §§ 89.110 and 536.110.2 R.S.Mo., and (4) whether the failure of relators to give notice of, or deliver a copy of the petition to Kelley within the statutory thirty-day-appeal period under §§ 89.110 and 536.110.2 is jurisdictional.

 It is clear that Kelley is an indispensable party to the proceedings in the trial court within the meaning of Rule 52.-04.

In *State ex rel. Emcasco Ins. Co. v. Rush,* 546 S.W.2d 188, 195–96 (Mo.App. 1977), this court analyzed Rule 52.04 and its counterpart, Fed.R.Civ.P. 19, and stated that Rule 52.04 requires various steps in the process to determine whether a person is a necessary or indispensable party. The first step in the process is to determine whether the party not joined or notified should be joined, if feasible, under the criteria of Rule 52.04(a). After it is determined that such party should be joined, then the particular factual setting must be examined to determine whether the action may proceed in the absence of such party under the criteria of Rule 52.04(b).

The overwhelming majority of decisions hold to the view that an applicant, granted a variance, is an indispensable party to a proceeding brought by adjacent landowners to review the actions and decisions of a board of adjustment.[1]

It is also a well settled principle that where the trial court does not have jurisdiction to determine the issues presented on the merits, the jurisdiction of the appellate court does not extend to a determination of the appeal. *Hart v. Bd. of Adj. of City of Marshall,* 616 S.W.2d 111, 113 (Mo.App. 1981); *Shepler v. Shepler,* 348 S.W.2d 607, 609 (Mo.App.1961). Jurisdiction may not be conferred on a court by consent or waiver and the court has a duty *sua sponte* to inquire into and determine whether it has jurisdiction. *Hart v. Bd. of Adj. of City of Marshall, supra,* 616 S.W.2d at 113. To determine whether the circuit court had jurisdiction we look to the relevant statutes.

 Section 89.110, R.S.Mo.1986, governing the review of decisions of the board of adjustment of cities[2] as distinguished from counties, provides in pertinent part as follows:

1. *Hernreich v. Quinn,* 350 Mo. 770, 168 S.W.2d 1054, 1060 (banc 1943) citing numerous decisions in fn. 9, 168 S.W.2d at 1060; *Cathcart–Maltby–Clearview Community Council v. Snohomish County,* 96 Wash.2d 201, 634 P.2d 853, 857 (banc 1981); *Schroeder v. Burleigh Cty. Bd. of Com'rs,* 252 N.W.2d 893 (N.D.1977); 4 R. Anderson, *American Law of Zoning,* 3d, § 27.21 at 521 *et seq.* (1986); *Sturmer v. Readington,* 90 N.J.Super. 341, 217 A.2d 622 (1966); *Hennigh v. Board of County Com'rs. of Colo. of Boulder,* 168 Colo. 128, 450 P.2d 73 (banc 1969); *Lanaux v. New Orleans, Bd. of Zoning,* 489 So.2d 329 (La. App.1986); 7 P. Rohan, *Zoning and Land Use Controls,* § 52.04[3][b] (1987) and cases cited therein; *see* annot., *Standing To Attack Zoning,* 69 A.L.R.3d 805 (1976).

2. Review of decisions of a county commission in noncharter first class counties are governed

by § 64.281, R.S.Mo.1986. Subsection 4 of that section provides that review is specifically governed by the Administrative Procedure Act, § 536.110, R.S.Mo., which requires a petition to be filed in thirty days and notice to the parties.

Review of decisions of county commissions in second and third class counties are governed by § 64.660.2 which has no requirement that a petition to review the decision must be filed within thirty days. *See State ex rel. Cass County, Missouri v. Dandurand,* No. 39840, Western District, Feb. 19, 1988. These various provisions including § 64.870—alternative provisions—(relating to noncharter first class counties), second and third class counties and cities often do not specifically refer to the Administrative Procedure Act.

Any person ... aggrieved by any decision of the board of adjustment ... may present to the circuit court ... a petition, duly verified, setting forth that such decision is illegal, in whole or in part, specifying the grounds of illegality. Such petition shall be presented to the court within thirty days after the filing of the decision in the office of the board. Upon the presentation of such petition the court may allow a writ of certiorari directed to the board of adjustment to review such decision ... and shall prescribe ... the time within which a return thereto must be made ..., which shall not be less than ten days.... The court may reverse or affirm, wholly or partly, or may modify the decision brought up for review....

The pertinent provision of the Administrative Procedure Act, § 536.110.2 provides:

1. Proceedings for review may be instituted by filing a petition in the circuit court of proper venue within thirty days after the mailing or delivery of the notice of the agency's final decision.

2. Such petition may be filed without first seeking a rehearing, but in cases where agencies have authority to entertain motions for rehearing and such a motion is duly filed, the thirty-day period aforesaid shall run from the date of the delivery or mailing of notice of the agency's decision on such motion. No summons shall issue in such case, but copies of the petition shall be delivered to the agency and to each party of record in the proceedings before the agency or to his attorney of record, or shall be mailed to the agency and to such party or his said attorney by registered mail, and proof of such delivery or mailing shall be filed in the case.

It can be seen from the above provisions that § 89.110 tracks § 536.110.1, in that a petition must be filed within thirty days from the decision of the board, but

§ 89.110 does not specifically require the petitioner to deliver or mail a copy of the petition to each party of record, as is required by § 536.110.2. The question then arises whether delivering or mailing a copy of the petition to all the parties of record as a matter of due process is jurisdictional, although not specifically required by § 89.110.

The question whether § 536.110.2 relating to notice, supplements § 89.110 is generally answered in *State ex rel. State Tax Commission v. Luten,* 459 S.W.2d 375 (Mo. banc 1970). There the Supreme Court held that when a court review of any administrative body is sought,

[I]t is first logical to see if there are any specific provisions for the same in the statutes relating to the particular agency. Such provision may be all inclusive.... If such specific provisions do not detail all factors involved, then the general provisions of Supreme Court Rule 100, 'Administrative Review', should be followed to supplement such inadequacies as was done in the *Day* case, *supra.* [*State ex rel. Day v. County Court of Platte County,* 442 S.W.2d 178 (Mo.App.1969)].[3]

Several decisions have dealt with the relationship between board of adjustment review statutes and the Administrative Procedure Act. Under these decisions, the Administrative Procedure Act supplements § 89.110 so that that Act is applicable to review of board of adjustment decisions.

In *Hart v. Bd. of Adj. of City of Marshall, supra,* 616 S.W.2d 111, the Western District held that, since the statutory method of review, § 89.110, did not detail certain matters, resort to Rule 100, relating to Administrative Review was necessary. 616 S.W.2d at 117.

*State ex rel. Day v. County Court of Platte County, supra,* 442 S.W.2d 178, dealing with an interpretation of § 64.660—review of a decision of county

---

**3.** Rule 100 was similar to the Administrative Procedure Act, but was drastically amended in 1982 effective Jan. 1, 1983. Now Rule 100.01 provides that "The provisions of sections 536.-100 through 536.150, RSMo shall govern procedure in circuit courts for judicial review actions of administrative agencies unless the statute governing a particular agency contains different provisions for such review."

court—held that (a) the Administrative Procedure Act, § 536.110.2, supplemented § 64.660 so that a petition must be filed within thirty days and (b) the person granted the variance must be given notice of the petition within the thirty-day-appeal period. The court held that (1) § 64.660 is not a complete provision in that it does not contain any time limit for filing the petition nor (2) does it provide for notice to necessary and indispensable parties, and (3) that "the requirement of § 536.110 that notice shall be given to 'each party of record' expresses the intention of the Legislature to eliminate any claim of a denial of due process under the state and federal constitutions." 442 S.W.2d at 182. Although, in *Day* the relators filed a motion adding the person who was granted the variance as a party, and that person was added, the fact that no notice had been given within the thirty day period of filing a petition, was crucial, and the dismissal of the petition was affirmed. The *Day* court held that §§ 64.660 and 536.110 are in *pari materia* and should be construed together. The *Day* court also referred to the two decisions in *Cohen v. Ennis*, 314 S.W.2d 239 (Mo.App.1958) and 318 S.W.2d 310 (Mo. banc 1958). The latter case holds that the provision in § 89.110 requiring a petition for review to be filed within thirty days of the board's order is "mandatory and jurisdictional." *See also, State ex rel. Monsey–Feager/Rouse–Waites v. McGuire*, 510 S.W.2d 449, 450 (Mo. banc 1974). *Day* held *Cohen* distinguishable because § 89.110 sets out a thirty day time limit, whereas § 64.660 does not.

In *Ford v. Boone County*, 654 S.W.2d 169 (Mo.App.1983), the court held that, because § 64.870.2, R.S.Mo.1986 does not contain a specific time period in which review may be sought, the statute must be read in conjunction with § 536.110 providing for the filing of a petition within thirty days of notice of an agency's final decision.

A recent case also deals with the issue of notice. In *State ex rel. Cass County, Missouri v. Dandurand, supra,* the Western District, dealing with a writ of prohibition, declined to follow *Day* "to the extent that *Day* is cited as controlling in the disposition of the present case." *Dandurand* held that a petition for review under §§ 64.660.2 and 536.110 [noting the relationship between the two sections] is not jurisdictionally deficient for failure to name all parties in the petition for review who appeared in the proceeding before the administrative body, nor is it necessary that all such parties be notified of the filing of the petition *within thirty days* following rendition of the administrative action. Slip op. at 7–8. The *Dandurand* court did not hold that the absent party was not indispensable nor that no notice was non-jurisdictional, but held only that the party given a variance need not be named in the petition for review or be notified *within the thirty day period* during which the petition for review must be filed. The court recognized that the filing of the petition for review must be filed within thirty days and implied that that requirement is mandatory and jurisdictional. *Cohen v. Ennis, supra,* 318 S.W.2d at 314. *Ford v. Boone County, supra.* As we read the *Dandurand* decision, the requirement in *Day* that the absent party who was granted a variance must be named a party in the petition for review need not be followed, and that under the provisions of § 536.110.2 the absent parties must be notified, but not necessarily within the thirty-day-appeal period. *See Bresnahan v. Bass*, 562 S.W.2d 385, 388 (Mo.App.1978). *Dandurand* clearly implies that as long as the grantee of the variance is given timely notice of the petition for review, as was done in that case, that is sufficient. A notice, however, pursuant to § 536.110.2, is still required and must be given, although § 64.660 does not so require. The Supreme Court has accepted transfer of the *Dandurand* decision. But the issue in *Dandurand* is whether notice must be given within thirty days. In the case at bar no notice was given.

In *McClain v. Board of Adjustment of City of St. Louis,* 508 S.W.2d 301 (Mo.App. 1974), this court held that the failure of a plaintiff, who sought review of a decision of the city's board of adjustment to issue a building permit, to give *any* notice to the

owners was jurisdictionally defective. We said:

> Our examination of the record shows plaintiff did not serve notice of their petition for review on the holders of the building permit *as required by § 536.110*, RSMo.1969, V.A.M.S. Such failure to comply with the statutory procedure is a jurisdictional defect.... The trial court thus had no jurisdiction to enter any order. (Emphasis added).

*McClain*, 508 S.W.2d at 302. This court directed the trial court to dismiss the petition.

From these statutes and judicial decisions, the following principles may, therefore, be deduced:

■ 1. Section 89.110 relating to review of decisions of a board of adjustment and § 536.110 are in *pari materia* and should be construed together. While §§ 89.110 and 536.110 provide that the petition for review must be filed within thirty days as a jurisdictional requirement, § 536.110 requires that forwarding a copy of the petition and notice be given to each party of record to the proceedings. Therefore it is jurisdictional that the agency and each party of record be notified personally or by registered mail of the petition for review filed by an aggrieved party.

2. If the party to the proceeding who was granted the variance is not given notice of the petition for review by an aggrieved party, the trial court lacks jurisdiction to hear the cause, and the appellate court has no jurisdiction to review the proceedings. *McClain, supra*, 508 S.W.2d 301.

■ 3. The petition for review need not necessarily name the party granted a variance in the petition for review, but the relator must give timely notice [4], not necessarily within the thirty day period, to the party granted a variance, sufficient for such party to enter the trial court proceeding and protect or defend his rights so as to eliminate any claim of denial of due

process under the state and federal constitutions. *See Day, supra; Hernreich v. Quinn*, 350 Mo. 770, 168 S.W.2d 1054, 1058–60 (banc 1943). There is no requirement in § 536.110.2 that notice or service of a copy of the petition must be made within the thirty days for which to appeal to the circuit court. There is only a requirement that a copy of the petition must be served. A timely notice satisfies §§ 89.-110 and 536.110.2.

■ 4. In accordance with §§ 89.110 and 536.110.2, it is a jurisdictional requirement that the petition for review be filed within thirty days after the decision of the board. *Cohen v. Ennis, supra*, 318 S.W.2d 310; *State ex rel. Monsey–Feager/Rouse–Waites v. McGuire, supra*, 510 S.W.2d at 450.

5. When an aggrieved party seeks a petition for review from a decision of the Board of Adjustment, the applicant who sought and was granted or denied a variance is an indispensable party to the proceeding within the meaning of Rule 52.04. If such applicant is not notified of the petition for review in the circuit court or present in the trial court, no applicant for rezoning could ever rely upon a variance when it is obtained. Such person is indispensable. His rights are vitally affected and any decision in the trial court will be highly prejudicial to him. It is clear in this case that if the relators were successful in their petition for certiorari, Kelley's development of the property would be halted or seriously impeded. Here, Kelley did not learn of this petition for review until months after its filing and after it committed itself to large expenditures to develop the property.

■ In the case at bar, relators-appellants do not deny that (1) they never gave notice to respondent-Kelly of their petition for certiorari in the circuit court, (2) § 536.110.2 requires that the petitioners-aggrieved parties "deliver" to "each party" a

---

4. *Bresnahan v. Bass, supra*, 562 S.W.2d at 388, "There is no time limitation imposed by [the Administrative Procedure Act or Rule 100] and this portion of the Rule is not violated unless

notice is so untimely as to deprive the [person] of due process." *See also, State ex rel. Cass County, Missouri v. Dandurand, supra*.

copy of the "petition" filed in the circuit court, or (3) § 536.110.2, if applicable, deprives a reviewing court of subject matter jurisdiction. Relators admit that Kelley has a constitutional right to some timely notice of the petition challenging the granted variances.

Therefore, in view of the above authorities, the failure of appellants to give notice to Kelley, is jurisdictional. Hence Kelley's motion to dismiss the appeal is well taken. Although Kelley was informed by the City of Des Peres on November 27, 1985, that the petition had been filed, and later was permitted to intervene in the action, the complete failure to give to Kelley by the relators was jurisdictional under § 536.110.2. Under that section relators have the burden to notify Kelley, in a timely fashion, of filing their petition for review and forwarding a copy of the petition alleging the "illegality" of the board's decision. The fortuitous circumstance of being notified of a petition for review cannot satisfy due process. Section 536.110.2 provides for the procedure and guarantees due process. Due process does not depend upon fortuitous circumstances but upon proper ritual as outlined by law so that a person's rights may be protected. *Cf. Wuchter v. Pizzutti,* 276 U.S. 13, 48 S.Ct. 259, 262, 72 L.Ed. 446 (1928).

Although we are compelled to dismiss the appeal because the trial court lacked jurisdiction, we have examined the substantive points raised by relators and find them to be without merit.

As to appellants' first point that the variance reducing the buffer zone from 25 to 13 feet was not legally passed since it did not receive at least four votes from the members of the board, we find that there was substantial evidence for the trial court to conclude that it was legally adopted. While the chairman, Mr. Wetzel, changed his vote, his changed vote was with the implied consent of four members of the board. Although there was no specific rule introduced that four members of the board must consent before a member changes his vote, the changed vote was with the implied consent of the other members. Fur-

thermore, their subsequent conduct supported the facts. *Cf. Conner v. Herd,* 452 S.W.2d 272, 275–76 (Mo.App.1970).

As to appellants' assertion that Kelley's original requests for variances had been abandoned and dismissed, because it had not formally amended its petition to reflect the new requests for variances, it need only be said that this proceeding involved the board of adjustment, an administrative agency, and such agency is not bound by the technical principles of pleading. Procedure before the board is simpler and less technical than formal judicial procedure. *Cf. Clearfield Cheese Company v. United States,* 308 F.Supp. 1072, 1076 (W.D.Mo.1969); *Davis v. Long,* 360 S.W.2d 307, 313 (Mo.App.1962); § 536.063(2).

As to appellants' third point that there was no finding of "hardship" or "practical difficulties," §§ 89.090.1(3) R.S. Mo., 405.040.A.3 of the city code, the issues of hardship and impracticality are matters of fact and upon which the board has wide discretion. *Rosedale–Skinker Imp. Assn. v. Board of Adjustment,* 425 S.W.2d 929, 933 (Mo. banc 1968); *cf., Matthew v. Smith,* 707 S.W.2d 411, 416 (Mo. banc 1986). We find no abuse.

As a substantive matter, the order of the trial court was supported by competent and substantial evidence upon the whole record. *Stockwell v. Board of Zoning Adjust. of Kansas City,* 434 S.W.2d 785, 789 (Mo.App. 1968).

In view of the foregoing, Kelly's motion to dismiss the relators' appeal is granted. The appeal is dismissed.

SATZ, C.J., and CARL R. GAERTNER, J., concur.